UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
v.                              )       No.:    3:10-CR-71
                                )               (VARLAN/SHIRLEY)
JEFFERY SILER,                  )
                                )
          Defendant.            )

**MEMORANDUM OPINION AND ORDER**

This criminal action is before the Court on the Report and Recommendation (the

"R&R") [Doc. 28], entered on November 10, 2010 by United States Magistrate Judge C.

Clifford Shirley, Jr.  The defendant, Jeffery Siler, is charged in a single-count indictment

[Doc. 1] with the alleged offense of being a felon in possession of a firearm, in violation of

18 U.S.C. §§ 922(g)(1) and 924(e).

On July 20, 2010, the defendant filed a Motion to Suppress Defendant's Statements

and Memorandum in Support (the "motion to suppress") [Doc. 13], moving the Court to

suppress inculpatory statements made by the defendant during two interviews conducted by

Investigator David Ogle ("Investigator Ogle") of the Knoxville Police Department (the

"KPD"), the first interview occurring on February 22, 2010, and the second interview

occurring on March 2, 2010 [*Id.*].  The defendant also asked the Court to suppress the firearm

charged in this case as "fruit of the poisonous tree." [*Id.*].  The United States filed a response

in opposition [Doc. 19].  On September 9, 2010, Magistrate Judge Shirley held an evidentiary

hearing on the defendant's motion [*see* Doc. 13]. Following the presentation of testimony and evidence, Judge Shirley permitted the parties to file post-hearing briefs, which the parties filed on October 4, 2010 [Docs. 24, 25]. On October 15, 2010, the parties filed reply briefs to the post-hearing briefs [Docs. 26, 27].

In the R&R, issued on November 10, 2010, Magistrate Judge Shirley found that the defendant's inculpatory statements during the February 22, 2010 interview and the March 2, 2010 interview were voluntarily made, the statements should not be suppressed, and the firearm should not be excluded. Accordingly, Judge Shirley recommended that the defendant's motion to suppress [Doc. 13] be denied. On November 24, 2010, the defendant filed objections to the R&R [Doc. 30]. On December 8, 2010, the government filed a response to the defendant's objections [Doc. 31].

This matter is now before the Court on the defendant's objections to the R&R.

## I.    Relevant Facts[1]

### A.    The First Interview - February 22, 2010

The defendant was arrested on February 22, 2010 on a probation violation [Doc. 23, p. 14]. That same day, the defendant was interviewed at the police station by Investigator Ogle [*Id.*]. Investigator Ogle testified that he wished to speak with the defendant regarding home burglaries in the Fountain City area of Knoxville, Tennessee [*Id.*, pp. 14, 46, 48].

---

[1] The interviews, shown on video discs at the evidentiary hearing, along with the testimony of Investigator Ogle, are summarized at length in the R&R [*see* Doc. 28]. The defendant has objected to portions of the magistrate judge's summary and findings of fact, along with his legal analysis and conclusions. The Court has noted and considers such objections herein.

At the beginning of the interview, Investigator Ogle read aloud the defendant's *Miranda* rights and the defendant acknowledged his rights and signed the waiver. Investigator Ogle told the defendant he would not lie to him and if the defendant helped him, he would help the defendant [Doc. 28, p. 16; Doc. 30, p. 2]. Investigator Ogle then told the defendant that he had evidence against him in regard to a burglary at a residence on Hillcrest Drive (the "Hillcrest burglary"). The property stolen in the Hillcrest burglary included: two rings; a Kimber handgun (the "handgun"); and a watch. The investigator told the defendant the evidence he had against him was as follows: (1) the female victim saw the defendant and can identify him; (2) a man named Gary Johnson ("Johnson") purchased the rings from the defendant and identified the defendant as the man who sold the rings to him; and (3) the KPD had the rings which contained the defendant's DNA [Doc. 28, pp. 4-5; Doc. 30, pp. 2-3].[2] The first and third of these statements, about the female victim and the DNA, were repeated by Investigator Ogle throughout both interviews and were not true [Doc. 28, pp. 20, 21, 50].

Investigator Ogle told the defendant that he had a "pretty good case" against him for two burglaries and that if the defendant helped him locate the handgun, Investigator Ogle would speak with the district attorney (the "DA") about the defendant's drug problem and

---

[2] The defendant repeated, several times, that he would like to see the evidence against him [Doc. 28, pp. 5-6]. The defendant asked to see the evidence because "[h]e doesn't even know what [Johnson] is talking about." [*Id.*, p. 5; Doc. 30, p. 3]. The defendant also stated that he did not understand "why [Johnson] pegging [him]" and that he wanted to see the DNA evidence and proof that the female victim had identified him [Doc. 28, p. 5].

about helping the defendant into drug rehabilitation [Doc. 28, pp. 5-6; Doc. 30; pp. 3-4].[3] Investigator Ogle stated that if the defendant worked with Investigator Ogle, he would help "put [the defendant] back on the street . . . but you have to be willing to work with me." [Doc. 28, p. 6]. Investigator Ogle also indicated that he had pretty good shots on "other cases" involving the defendant. Investigator Ogle asked the defendant to be "honest" with him and stated that "all I'm asking is for you to work with me and get some people's property back" and then the defendant could "get some court-ordered help." [Doc. 28, p. 6]. Investigator Ogle also asked the defendant about gold exchanges and pawn shops and told the defendant that he wanted the defendant to help "bust up" these establishments. Investigator Ogle also indicated that he had clout with the DA and discussed the defendant's criminal history and the potential impact of an aggravated burglary and felony theft charges. Investigator Ogle stated that "prisons are crowded and they are more than willing to work with you" to get back on probation [Doc. 28, p. 7; Doc. 30, p. 4]. Investigator Ogle stated that if the defendant was in jail he would not be able to assist the police, but, if the defendant's probation were reinstated, the defendant could potentially provide some assistance [Doc. 28, p. 17; Doc. 30, p. 4].[4]

---

[3] Investigator Ogle testified that the defendant would have to be charged and incarcerated before entering drug rehabilitation [Doc. 28, p. 7]

[4] Investigator Ogle testified that there was a possibility that the defendant's probation would be reinstated, but that this decision was up to the defendant's probation officer and a judge [Doc. 23, p. 53; Doc. 28, p. 18].

Investigator Ogle informed the defendant that he had him on two burglaries and two felony thefts. Investigator Ogle told the defendant that he could not promise him anything but that he was the one who typed the warrants. The defendant asked the investigator how he could help him and the investigator replied that "it all has to do with whether you get charged or whether you get sent to rehab, whether you get sent to prison or whether you go to rehab." [Doc. 28, p. 7]. The defendant, who appeared frustrated at times during the interview, indicated that he wanted to speak with the DA if the investigator could only "jibber jabber" and was unable to make any decisions or put anything in writing. Investigator Ogle replied, "then we would have to charge you[.]" [Doc. 28, p. 8]. The defendant responded, "well go ahead and charge me." [*Id.*]. Investigator Ogle reiterated that if the defendant would work with him to get the stolen property back, the defendant would not be "facing a bunch of charges." [*Id.*].[5]

Investigator Ogle again told the defendant that he was planning on writing warrants for two aggravated burglaries and two thefts. The investigator also indicated that there were other burglary cases that he might bring against the defendant [Doc. 30, p. 5; Doc. 28, p. 8]. Investigator Ogle told the defendant that he was a high range offender and implied that the defendant would be facing some time. Investigator Ogle then gave the defendant his card and left the room, leaving the defendant alone.

---

[5] Investigator Ogle testified at the evidentiary hearing that when he stated "a bunch of charges," he was referring to the fact that the defendant was a suspect in up to "twenty or thirty" burglaries [Doc. 28, p. 8].

Approximately one minute later, the defendant signaled that he wished to speak with the investigator. When Investigator Ogle re-entered, the defendant stated that he "still wanted to see the DNA," but stated "if I put you up on the gun, what are you going to do for me[,]" immediately changing his phrasing to "a gun." [Doc. 28, p. 8; Doc. 30, p. 5]. Investigator Ogle responded that if the defendant got the handgun, he would tell the probation officer that the defendant was working with him and that he was a good candidate for probation [Doc. 28, p. 9; Doc. 30, p. 5]. The defendant asked Investigator Ogle what he could do "right now," gesturing toward a stack of papers on the table [Doc. 28, p. 9]. Investigator Ogle testified that this stack of papers contained "about thirty" different investigations involving the defendant [*Id.*]. The defendant asked Investigator Ogle if the stack of papers would go "in the trash can" if the defendant helped locate the handgun [Doc. 28, p. 9]. Investigator Ogle responded "there you go[,]" and that he would do his best to get the defendant help [*Id.*].

The defendant told Investigator Ogle that he wanted to know what would happen to him "today," and Investigator Ogle responded, "we arrest you." [Doc. 28, p. 10]. The defendant asked the investigator what would happen if he cooperated regarding the location of the handgun [*Id.*]. Investigator Ogle responded that he would contact the defendant's probation officer, speak with the DA, and the defendant might be able to get some drug rehabilitation and help "fence some stuff" [*Id.*]. The defendant stated that he was not concerned with any more drug treatment discussions, but that he was concerned with the stack of papers on the desk [*Id.*]. Investigator Ogle stood up, pulled together the stack of

papers, and said "you don't have to worry about [it]." [*Id.*]. Investigator Ogle stated that he was the one who typed the warrants and, if a warrant was not typed, the defendant would not get charged with a crime [*Id.*; Doc. 30, p. 5].

Following this exchange, the defendant asked who was going to get charged with the gun [Doc. 28, p. 10; Doc. 30, pp. 5-6]. Investigator Ogle responded "nobody" will get charged with the gun [Doc. 28, p. 10; Doc. 30, pp. 5-6]. The defendant repeated his question and Investigator Ogle responded "nobody's going to get charged with the gun . . . I want the gun because it means a lot to the boy . . . it don't have anything to do with you . . . nobody is going to get charged with the gun." [Doc. 28, p. 10; Doc. 30, pp. 5-6]. The defendant asked would a person be charged if the gun was found in his or her house [Doc. 28, pp. 10-11; Doc. 30, p. 6]. Investigator Ogle responded "thank you . . . I will not charge them." [Doc. 28, pp. 10-11; Doc. 30, p. 6]. The defendant told Investigator Ogle that he would have to "go over there and get that gun" and that it would take about three hours [Doc. 28, p. 11; Doc. 30, p. 6]. Investigator Ogle told the defendant that if he could produce the handgun, the investigator would speak to the defendant's probation officer who would then make the decision about whether to re-establish the defendant's probation [Doc. 28, p. 11]. Investigator Ogle told the defendant that he was willing to work with him if he could get the handgun back, and that he would just "roll with" whatever he had now. The interview ended with the defendant pointing toward the stack of papers and asking"[w]hat about this sh** right here?" [*Id.*]. Investigator Ogle responded "[y]ou don't have to worry about it. I just want the gun." [*Id.*].

## B.     The Second Interview - March 2, 2010

A second interview occurred on March 2, 2010, eight days after the first interview, at the request of the defendant and his wife, who made several phone calls on the defendant's behalf.  The defendant remained incarcerated during those eight days.  After being read his *Miranda* rights, the defendant asked the investigator "will the things I say incriminate me?" [Doc. 28, p. 12; Doc. 30, p. 6].  Investigator Ogle responded that he did not know, but that he "could not get [the defendant] help unless it is court-ordered" and through the DA [*Id.*].  Investigator Ogle stated that he could not "make [the defendant] any promises" but that he would speak with the DA about the defendant's help in retrieving the stolen property and he would tell the DA that the defendant was "ready to get some help." [Doc. 28, p. 12].  Investigator Ogle told the defendant that he would tell the DA that the defendant helped him with the stolen property and with Johnson.  The defendant then signed a waiver of his *Miranda* rights.

Next, the defendant and Investigator Ogle discussed the evidence the investigator had against the defendant for the Hillcrest burglary.  This was the same mixture of true and false evidence discussed during the first interview.  The defendant told Investigator Ogle that Johnson was not telling the whole truth and stated that "I'm going to put y'all in the direction of where that gun is at." [Doc. 28, p. 13].  The defendant again stated that he did not want to say anything that would "incriminate" him and Investigator Ogle responded that he would tell the DA about the defendant's help [*Id.*; Doc. 30, pp. 6-7].  The investigator repeated that the DA "always works with us" and he believed "they will work with us this time." [*Id.*; Doc.

30, pp. 6-7]. Following this exchange, the defendant admitted to the Hillcrest burglary, from which the handgun had been taken, and stated that after the robbery, the defendant sold the handgun to his nephew for $300.00.

The defendant then expressed his desire to repent for his sins and let people know he was sorry. The defendant and Investigator Ogle discussed God and the importance of doing the right thing. They also discussed persons believed to be active in purchasing stolen property [Doc. 30, p. 7]. The defendant also admitted that he committed the Hillcrest burglary alone and that Johnson had not been with him [*Id.*]. Following this admission, Investigator Ogle questioned the defendant about other burglaries [*Id.*].

Investigator Ogle then told the defendant what he was going to do: first, the investigator would let the defendant call his wife; second, he would charge the defendant with the two burglaries; third, the investigator would attempt to get the property back; and fourth, he would speak with the DA and tell the DA the defendant had cooperated. Investigator Ogle told the defendant that he was going to charge him with the two burglaries, because "that's how I can get you into rehab." [*Id.*; Doc. 28, p. 14]. Investigator Ogle told the defendant that he was "not going to go across the street" and the defendant would not be "charged federally or anything like that. [Doc. 30, p. 7; Doc. 28, p. 15]. The investigator testified at the evidentiary hearing that, at this point in the interview, he did not plan to go to the federal government with charges [Doc. 23, p. 38]. The investigator repeated that he was going to charge the defendant with the two burglaries, go to the DA, tell him the defendant was honest, and ask the DA to show leniency and get the defendant some help.

Following the second interview, the defendant was charged in state court with two cases, each containing a charge of aggravated burglary and a charge of felony theft [Doc. 23, pp. 42-43]. These state charges have been bound over to the grand jury [*Id.*]. Investigator Ogle testified that he spoke with the DA about the defendant's case and that he also attempted to contact the defendant's probation officer [*Id.*].

Following the indictment charging the defendant with being a felon in possession of a firearm, the defendant moved to suppress all statements regarding the handgun made to Investigator Ogle or any other officer during the February 22, 2010 and the March 2, 2010 interviews on grounds that the statements were not made "voluntarily, knowingly, and intelligently" as required by the Fifth Amendment [Doc. 13, p. 5].

## II.     Analysis

### A.     Standard of Review

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected. In doing so, the Court has carefully considered the R&R [Doc. 28], the underlying and supporting briefs, the hearing transcript, the video discs of the interviews, the parties' post-hearing briefs [Docs. 13, 19, 24, 25, 26, 27], the defendant's objections [Doc. 30], and the government's response to those objections [Doc. 31], all in light of the relevant law. For the reasons set forth herein, the Court will overrule the defendant's objections [Doc. 30], accept in whole the R&R [Doc. 28], and deny the defendant's motion to suppress [Doc. 13].

## B.     The R&R

The R&R considered the entire course of police conduct during the first and second interviews and found that the defendant made inculpatory statements about the handgun during both interviews.  In the magistrate judge's analysis of both interviews and the voluntariness of the defendant's statements, the magistrate judge considered the following conduct by Investigator Ogle, whether it was coercive, and whether the totality of the circumstances rendered the defendant's statements involuntary: the investigator's statements and/or promises about the burglary charges; the investigator's statements and/or promises about drug rehabilitation and probation; the investigator's statements and/or promises about the handgun and a gun charge; the investigator's misrepresentations of the evidence; and the investigator's statements about God and attempts to appeal to the defendant's conscience.

After considering the investigator's conduct and the totality of the circumstances, the magistrate judge found that several statements by Investigator Ogle, taken in insolation, were, or seemed to be, objectively coercive.  The magistrate judge concluded, however, that within the context of each interview and after the investigator's statements and promises were considered in their entirety, the investigator's conduct and his investigative techniques did not rise to the level of objective coercion sufficient to overbear the will of the defendant. In addition, the magistrate judge found that even if several statements by the investigator were objectively coercive or deceptive, the effect of these statements were insufficient to overbear the will of the defendant and did not motivate him to make the inculpatory

statements. Accordingly, the magistrate judge concluded that inculpatory statements made by the defendant during both interviews were voluntarily made and should not be suppressed.

### C. The Defendant's Objections to the R&R

The defendant objects that the R&R improperly considered the investigator's conduct during the interviews and improperly applied factors relevant to the totality of the circumstances test. The defendant asserts that the specific conduct of the investigator–his statements about misrepresented evidence, his statements and promises about the effect of the defendant's cooperation, and his statements and promises about the handgun and the gun charge–were objectively coercive, sufficient to overbear the will of the defendant, and motivated the defendant's decision to make inculpatory statements.

The defendant objects to the R&R's findings that the investigator did not promise the defendant that he would not face any charges if the defendant cooperated. The defendant argues that the investigator presented him with a choice–either (1) cooperate, not be charged with anything, receive the investigator's assistance and potentially drug rehabilitation and probation, or (2) not cooperate and receive nothing. The defendant also objects to the R&R's finding that the investigator's misrepresentations of the evidence were not objectively coercive. He asserts that the R&R minimizes the misrepresentations and that the Court should apply greater weight to these misrepresentations.

The defendant also objects to the R&R's finding that the investigator's statements and promises about the handgun and the gun charge were insufficient to overbear the will of the defendant. The defendant contends that the investigator's promise not to charge him with

the gun was objectively coercive and sufficient to overbear his will. The defendant asserts that his statements concerning the handgun were conditioned on the reasonable belief that he did not have to worry about being charged if he told the investigator where the handgun was located.  He asserts that it was only after the investigator promised him that he would not be charged that he made inculpatory statements.  The defendant also objects to the R&R's finding that the investigator's promise about the gun charge was not binding on federal authorities because the principal consideration is whether the defendant's confession was voluntary.  The defendant also discusses *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010), and *United States v. Lopez*, 437 F.3d 1059 (10th Cir. 2006), and asserts that the facts and principles set forth in *Lall* and *Lopez* apply to the facts of this case and that the magistrate judge improperly used several "small differences" in distinguishing *Lall* and other cases.

### D.    The Court's Review of the Defendant's Objections

"An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).  The R&R states that when determining the voluntariness of a confession and whether it was coerced, a court must view the confession under the "totality of the circumstances," *Arizona v. Fulimante*, 499 U.S. 279, 286-87 (1991), and that the following three requirements must exist for a confession to be found involuntary due to police coercion:

(1)     the police action was objectively coercive;

> (2) the coercion in question was sufficient to overbear the defendant's will; and
>
> (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.

[Doc. 28, pp. 19-20 (quoting *United States v. Mahon*, 190 F.3d 416, 422 (6th Cir. 1999))].[6]

The defendant's objections are to the R&R's consideration of the above requirements and the R&R's application of the totality of the circumstances factors to the facts of this case. In considering the defendant's objections, the Court has carefully reviewed the parties' briefs and the relevant law, along with an independent review of both interviews and the transcript from the evidentiary hearing.

### E. Whether the Police Action Was Objectively Coercive

#### 1. Statements and/or Promises About the Burglary Charges, Drug Rehabilitation, and Probation

The defendant objects that the investigator's statements and/or promises of leniency about the burglary charges, drug rehabilitation, and probation were objectively coercive such as to overbear the will of the defendant.

The R&R properly notes that while a promise of possible leniency is relevant to a court's determination of whether a confession was involuntary, such as promise is "not generally impermissible." [Doc. 28, p. 22]. *See United States v. Wiley*, 132 F. App'x 635,

---

[6] Factors for a court to consider when evaluating the totality of the circumstances include: "the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." *United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2002) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

640 (6th Cir. 2005) (finding "the detectives' alleged promise to inform the prosecutor of [the defendant's] cooperation did not render the confession coerced, even if the detectives suggested that such cooperation may have a positive impact on [the defendant's] sentence"). The magistrate judge also noted that in some circumstances, police promises of leniency may be objectively coercive if the promises are "broken or illusory." *United States v. Johnson*, 351 F.3d 254, 262 (6th Cir. 2003).

The magistrate judge found that Investigator Ogle presented the defendant with two choices, either (1) cooperate, be charged with two burglaries, and the investigator would speak with the DA and the probation officer about the defendant's cooperation, or (2) not cooperate, potentially be charged with a "bunch of charges," and the investigator would not speak with the DA and the probation officer. The magistrate judge also found that one of the investigator's statements, taken in isolation, could constitute a promise of leniency, coupled with a threat of imprisonment [Doc. 28, p. 24]. However, when the magistrate judge viewed that statement in the context of the entire interview and the whole of the investigator's conduct, the magistrate judge determined that it was not objectively coercive because the investigator repeatedly told the defendant he could not promise him anything except that he would go to the DA [*Id.*, pp. 24-25]. The magistrate judge concluded, however, that even if it was objectively coercive, the statement was not sufficient to overbear the will of the defendant based on the totality of the circumstances.

The defendant, on the other hand, asserts that he was presented with the following choices, either: (1) cooperate, not be charged with the burglary charges or a gun charge, and

the investigator would speak with the DA and the probation officer about the defendant's cooperation, or (2) not cooperate, be charged with the burglary charges and a gun charge, and the investigator would not speak with the DA and the probation officer. The defendant also asserts that he made the inculpatory statements only after the investigator assured him he would not be charged.

The Court has independently reviewed both interviews, along with the briefs of the parties, and concludes that the magistrate judge properly characterized the defendant's choices. Investigator Ogle told the defendant there was a "pretty good case" against him on the Hillcrest burglary, a "solid" case against him on another burglary, and that the investigator had some evidence against the defendant on an unknown number of other burglary investigations. Near the end of the first interview, the investigator also stated that if the defendant helped him locate the handgun, the investigator would "roll with" the two burglary charges the investigator had previously discussed and not the "bunch of charges" potentially involving the defendant. As noted by the magistrate judge, the investigator did not threaten the defendant with immediate imprisonment if he did not cooperate, nor does the Court find that the investigator gave the defendant the choice that he would face no charges if he cooperated, or that the defendant thought this was the deal offered [Doc. 28, pp. 24-25]. *See Williams v. Withrow*, 944 F.2d 284, 287 (6th Cir. 1991), *modified on other grounds*, 507 U.S. 680 (1993) (noting that a promise of leniency could be coercive if it was "coupled with threats of immediate imprisonment"). Further, throughout both interviews, the investigator repeatedly promised the defendant that, if he cooperated, the investigator would speak with

the DA and the probation officer. The investigator told the defendant that favorable statements he could make to the DA and the probation officer were likely to be well received and would ultimately help the defendant. Almost every time the investigator mentioned the possibility of drug rehabilitation or probation, he stated that he could not make any promises and the defendant could only get these alternatives if he cooperated and with the help of the DA and the probation officer. In presenting the possibility of the defendant's cooperation, the investigator also told the defendant that he could talk over the cooperation offer with an attorney.

These discussions and promises of leniency between the investigator and the defendant about the burglary charges and the potential effect of the defendant's cooperation were distinct from the discussions between the investigator and the defendant about charges associated with the handgun. The investigator's promises that "I will not charge" and "no one" was going to be charged with the handgun were straightforward promises of non-prosecution–if you cooperate and help me locate the gun, then "no one" will be charged. In contrast, the investigator's promises regarding the burglary charges were indirect promises to bring a known, limited number of charges in conjunction with the possibility for drug rehabilitation and probation if the defendant cooperated, versus an unknown "bunch of charges" and no possibility for drug rehabilitation and probation if the defendant did not cooperate.

In addition, almost immediately before the investigator left the interview room at the end of the first interview, he told the defendant he was going to type up warrants for two

aggravated burglaries and two felony thefts, and that there were "others" potentially implicating the defendant. This statement is consistent with the investigator's statements since the beginning of the interview. Moreover, the defendant was only charged in state court with the two burglaries and the investigator testified at the evidentiary hearing that he made the defendant's cooperation known to the DA and attempted to speak with the defendant's probation officer. As such, the investigator's promises of leniency after cooperation remained consistent throughout the interviews and these promises were not broken or illusory.

In sum, the Court agrees with Magistrate Judge Shirley that the investigator promised the defendant that if he cooperated, the investigator would speak with the DA and the probation officer and, contingent upon the decisions of the DA and the probation officer, the defendant could receive drug rehabilitation and probation. The Court agrees with Magistrate Judge Shirley that, when the context of both interviews are considered, along with the whole of the investigator's conduct, Investigator Ogle did not threaten the defendant with immediate imprisonment versus promises of leniency dependent on the defendant's cooperation. Accordingly, because the investigator's promises of leniency were not illusory, did not threaten immediate imprisonment, and because the investigator did not promise the defendant that no charges would be brought against him if he cooperated, the Court agrees with the magistrate judge that the investigator's statements and/or promises of leniency regarding the burglary charges, drug rehabilitation, and probation were not objectively coercive.

## 2.       Misrepresentations of the Evidence

The defendant also objects that Investigator Ogle's misrepresentations of the evidence, coupled with his promises of leniency, were sufficiently coercive such as to render the defendant's statements involuntary. The defendant asserts that the facts and analysis of *Lopez*, a case which considers misrepresentations of evidence and promises of leniency by police officers, provides guidance for the analysis of this case. 437 F.3d 1059. In *Lopez*, FBI agents misrepresented evidence they had against the defendant when they interviewed him about a murder in which the defendant was a suspect. 437 F.3d at 1061.[7] The defendant, who initially denied anything to do with the murder, confessed during a subsequent interview. *Id.* at 1061-62. Prior to the defendant's confession, one of the agents used slips of paper as a visual to show the defendant that if he confessed to murder by mistake, he would receive six years imprisonment as opposed to sixty years if he did not confess and was convicted. *Id.* at 1061. The agent also told the defendant that others had received lenient sentences after confessing to accidental murders and they threatened to make the defendant's mother appear to be a "liar" if she supported the defendant's alibi at trial. *Id.*

The *Lopez* court affirmed the trial court's finding that the agents had misrepresented and exaggerated the evidence against the defendant. *Lopez*, 437 F.3d at 1067. The court also found that the agents' promise of leniency via the slips of paper was not a permissible vague

---

[7] The false evidence included a positive gun residue test, the existence of a number of eyewitnesses who could identify the defendant, and evidence of footprints at the scene of the crime which matched those of the defendant. *Lopez*, 437 F.3d at 1061.

and non-committal promise but an actual promise that the defendant would spend fifty-four fewer years in prison if he confessed. *Id.* at 1064-67. The *Lopez* court found that the "nature of [such] a promise may indeed critically impair a defendant's capacity for self determination[.]" *Id.* at 1065. The court also found that factors which potentially mitigated the coercive circumstances of the interrogations, such as the reading of *Miranda* rights and the relatively short length of the interrogation, did not eliminate the coercion. *Id.* Given these circumstances, the *Lopez* court determined that the agents' misrepresentations of the evidence, together with the promise of leniency, were sufficient circumstances to overbear the will of the defendant and render his confession involuntary. *Id.*

The fact that police misrepresent evidence against a defendant, while relevant to the totality of the circumstance test, is insufficient to make an otherwise voluntary confession inadmissible. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *see also Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998) (stating that a false statement, "without more, does not render an otherwise involuntary confession involuntary"). A finding of police coercion is "a high standard to overcome, which is not itself satisfied by showing that a police officer lied." *United States v. Rutherford*, 555 F.3d 190, 198 (6th Cir. 2009). The *Lopez* court noted similarly, stating the general rule that "[i]t is well-settled that a confession is not considered coerced merely because the police misrepresented to a suspect the strength of the evidence against him." *Lopez*, 437 F.3d at 1065 (citation omitted).

In this case, Investigator Ogle misrepresented the evidence several times in both interviews.[8]  Yet, as noted above and by the magistrate judge, this type of deception is not forbidden and does not alone render a confession involuntary [Doc. 28, p. 29].  *See, e.g., Ledbetter*, 35 F.3d at 1066, 1070 (stating that "[a] defendant's will is not overborne simply because [the defendant] is led to believe that the government's knowledge of his guilt is greater than it actually is"); *United States v. Little*, No. 92-2340, 1993 WL 453396, at *7-*9 (6th Cir. Nov. 4, 1993) (finding the defendant's confession not involuntary after noting that the police "purposefully led [the defendant] to believe that one of the defendant's cohorts provided agents with information").  During both interviews, the defendant also expressed skepticism and questioned the veracity of the misrepresented evidence–particularly the DNA evidence and Johnson's identification of the defendant–yet he continued to speak with the investigator.  Investigator Ogle's misrepresentations were also misrepresentations of fact. Courts have recognized a distinction between misrepresentations of fact and misrepresentations of law.  A misrepresentation of fact is not generally "enough to render a suspect's ensuing confession involuntary, nor does it undermine the waiver of the defendant's *Miranda* rights."  *Lall*, 607 F.3d at 1285; *see, e.g., Frazier*, 394 U.S. at 739 (police falsely told suspect that his cousin had implicated him).  "Police misrepresentations of law, on the other hand, are much more likely to render a suspect's confession

---

[8] The defendant objects that the R&R should specify that the investigator repeatedly lied about this evidence [Doc. 30, p. 9].  The Court, however, finds that the R&R properly notes that Investigator Ogle misrepresented evidence and that the investigator repeated, without correction, the misrepresented evidence.

involuntary." *Lall*, 607 F.3d at 1285-86 (citing cases). Given the facts and circumstances of this case, the Court agrees with the magistrate judge that the investigator's misrepresentations of the evidence alone were not objectively coercive.

The Court also notes that in *Lopez*, the court's holding that the confession was involuntary was grounded on the combined effect of the agents' misrepresentations and their promise of leniency if the defendant confessed.[9] If the misrepresented evidence had been considered without the promise of leniency, it is not clear that the *Lopez* court would have found it sufficient to render the defendant's statements involuntary. In this case, the Court does not find the combined effect of the misrepresented evidence and the promises of leniency to be one of objective coercion. Investigator Ogle's promises of leniency–a promise of fewer burglary charges and a promise to speak with the DA and the probation officer if the defendant cooperated–were not illusory promises that led the defendant to expect unlikely treatment and, when combined with the misrepresented evidence, do not rise to the level of objective coercion. As stated above, the investigator repeatedly told the defendant that he could not promise anything except to make the defendant's cooperation known to the DA and to charge him with a limited number of the burglary charges. The investigator's indirect, non-illusory promises of leniency, contingent on the decisions of the DA and the probation

---

[9] "[I]n this case, the agents' misrepresentations of the evidence against [the defendant], together with [the detective's] promise of leniency to [the defendant] if he confessed to killing . . . by mistake, are sufficient circumstances that would overbear [the defendant's] will and make his confession involuntary." *Lopez*, 437 F.3d at 1065.

officer, are not the type of leniency promised in *Lopez*.[10]  Accordingly, after considering

Investigator Ogle's misrepresentations of the evidence in both interviews and the entirety of

the investigator's statements, the Court does not find the combined effect of Investigator

Ogle's misrepresentations and his promises of leniency to be objectively coercive.

### 3. Statements and/or Promises About the Handgun and Gun Charge

The defendant also objects that Investigator Ogle's statements and/or promises about

the handgun and the gun charge were objectively coercive such as to overbear the will of the

defendant.  The defendant asserts that the facts and coercive conduct in *Lall* are similar to

this case and that the R&R improperly distinguished *Lall* and improperly considered the

totality of the circumstances.  *Lall*, 607 F.3d 1277.  In response, the government asserts that

the R&R properly determined that the defendant's statements were voluntary and that the

facts of this case are distinguishable.

In *Lall*, police officers came to the defendant's family residence after a burglary.  *Lall*,

607 F.3d at 1281.  While at the residence, the defendant's brother told the officers that the

defendant "was into credit card fraud and making ID's."  *Id.*  The officers read the defendant

his *Miranda* rights and told the defendant their main concern was the burglary and the

perpetrator.  *Id.*  The officers also told the defendant and his family that any information

shared with the officers would not be used to prosecute him.  *Id.*  The officers then took the

---

[10] The *Lopez* court quoted the district court as stating that "[t]his is not a vague and non-committal promise.  This is also not a promise to make defendant's cooperation known to the United States Attorney or the Judge, which courts condone."  *Lopez*, 437 F.3d at 1065.

defendant into his bedroom where he showed them equipment he used to commit identity theft. *Id.* The officers seized two pieces of the equipment. *Id.* The officers did not arrest the defendant at that time, but, less than twenty-four hours after seizing the equipment, the officers alerted the Secret Service to its existence. *Id.* at 1282. Several days later, the officers called the defendant to the police station, told him he did not need to bring a lawyer, and told him he "wasn't going to be charged with any of this." *Id.* at 1281. The defendant was read his *Miranda* rights for the second time and "expound[ed]" on his initial statements. *Id.* at 1281-82. Throughout the second interrogation, the defendant was completely unaware that the officers had contacted the Secret Service about the seized equipment. *Id.* The defendant was subsequently arrested by the Secret Service and charged with federal offenses. *Id.* The defendant moved to suppress statements made during the initial and subsequent interrogations and the physical evidence seized from his bedroom. *Id.* The defendant was ultimately convicted. *Id.*

In considering the defendant's statements at his family's residence and in his bedroom, the *Lall* court determined that the officer's assurance to the defendant that he was not going to be charged contradicted the previous *Miranda* warnings. *Lall*, 607 F.3d at 1282-83. Given this contradiction, the court found that the defendant did not understand his right against self-incrimination or the consequences of waiving it. *Id.* at 1283-84. In considering the totality of the circumstances, the court noted that the defendant was twenty-years old, alone in his bedroom at the time he gave the statements, and he was told that the purpose of the questioning was to protect his family and he would not be charged with anything. *Id.* at

1284.  In accessing the voluntariness of the defendant's statements, the *Lall* court noted that

"a significant aspect of that inquiry here involves the effect of deception in obtaining a

confession." *Lall*, 607 F.3d at 1285.  The deception at issue, the *Lall* court noted, was not

a misrepresentation of fact, which "are not enough to render a suspect's confession

involuntary, nor . . . undermine the waiver of the defendant's *Miranda* rights." *Id.* (citing

cases).  The deception, the *Lall* court found, was an assurance of non-prosecution, that

anything the defendant said would not be used to prosecute him and that he would not be

charged for any statements or evidence collected on the night of the burglary. *Id.* at 1285-87.

The *Lall* court found it "inconceivable" that the defendant would understand that the officer's

assurance of non-prosecution did not preclude the use of the defendant's confession in a

federal prosecution. *Id.*  The court found that:

> [T]he only plausible interpretation of [the officer's] representations,
> semantic technicalities aside, was that the information [the defendant]
> provided would not be used against him by [the officer] or anyone else.
> Under these circumstances, [the officer's] statements were sufficient to
> render [the defendant's] confession involuntary and to undermine
> completely the prophylactic effect of the *Miranda* warnings . . .
> previously administered.

*Id.*

The *Lall* court found similarly in its consideration of the defendant's statements from

the second interrogation. *Lall*, 607 F.3d at 1290.  The court found the defendant's statements

at the second interrogation "may lean more heavily" towards a finding of involuntariness

because the interrrogation took place at a police station, the defendant was told he did not

need to bring a lawyer, and the officer's statements of non-prosecution came after the officer

had contacted the Secret Service and alerted them to the existence of the evidence. *Id.* at 1291. The *Lall* court concluded that these statements were "similarly the product of improper promises of non-prosecution and . . . not voluntary[,]" and that "[i]n effect, [the officer] was acting on behalf of the Secret Service." *Id.*

In this case, the magistrate judge found that the investigator's promise that "nobody's going to get charged" with the handgun was objectively coercive because it was a direct promise of leniency in exchange for information about the gun [Doc. 28, p. 27].[11] However, the magistrate judge distinguished this case from *Lall* and concluded, after examining the totality of the circumstances, that the effect of the investigator's promise did not overbear the will of the defendant [*Id.*, pp. 36-37].

As an initial matter, the Court agrees with the magistrate judge that the investigator's promise not to charge the defendant with a gun charge is not binding on federal authorities [*see* Doc. 28, pp. 28-30]. In addition, the fact that the defendant may have assumed that statement was binding does not alone render his confession coerced because, as the defendant asserts, the focus of the inquiry is on whether the investigator's conduct was deceptive and whether such conduct rendered the defendant's statements involuntary [*Id.*].

---

[11] This direct promise not to charge is distinguishable from the indirect promise by the investigator in regard to the burglary charges, drug rehabilitation, and probation. These promises were indirect promises of leniency because, as stated above, the investigator did not promise that no charges would be brought against the defendant if he cooperated and the investigator repeatedly stated that the potential for drug rehabilitation and probation were contingent on the decisions of the DA and the probation officer.

Upon review of *Lall*, the Court agrees with the magistrate judge that the investigator's promise that the defendant or "no one" would be charged with the handgun is distinguishable from the deceptive statements in *Lall*. Investigator Ogle, at the time he made this promise to the defendant, was not deceiving the defendant about the handgun or a gun charge. Investigator Ogle's deception throughout the interviews was only in regard to the misrepresented evidence. Unlike in *Lall*, Investigator Ogle did not tell the defendant that no charges would be brought against him, did not tell the defendant that anything he said would not be used to incriminate him, and did not tell the defendant that previously seized evidence would not be used against him. Unlike in *Lall*, this defendant was informed and aware that he was facing burglary charges when he made the inculpatory statements and, unlike in *Lall*, the defendant was told by the investigator that he could speak with an attorney about the investigator's offer of cooperation. Also distinguishing this case from *Lall*, the defendant re-initiated the first interview and called the investigator for a second interview. The investigator also testified at the evidentiary hearing that at the time of the interviews, he did not intend to go to the federal government with evidence of the handgun and the record contains no evidence contradicting the investigator's testimony or indicating he was acting for the federal government or deceiving the defendant when he told him he was not going to charge him with the gun.

**F.     Whether the Coercion in Question Was Sufficient to Overbear the Will of the Defendant**

While Magistrate Judge Shirley found that several statements and/or promises by the investigator were or seemed to be objectively coercive, he determined that based on the totality of the circumstances, the coercion in question was not sufficient to overbear the will of the defendant [Doc. 28, p. 45].   In examining the totality of the circumstances, the magistrate judge found that the interviews were not overly lengthy, the defendant was provided all necessary comforts, and the interviews were, on the whole, cordial.   Judge Shirley also noted that the defendant, in his mid-forties and with a prior criminal history, was not a novice when it came to dealing with the police and that the defendant twice received, affirmatively acknowledged understanding, and questioned the investigator about his *Miranda* rights and whether his statements could "incriminate" him, factors which indicated to the magistrate judge that the defendant knew the significance of his statements.   The magistrate judge also found that the investigator repeatedly informed the defendant about the contingent nature of his promises and the defendant indicated that he understood the investigator could not make any promises without the DA, as evidenced by the defendant's request to bring the DA into the interview.   In addition, the magistrate judge found there to be no evidence that the defendant feared violence or that the investigator made any threats of immediate imprisonment.   Judge Shirley also noted that the defendant re-initiated the interviews on two occasions, first when he called the investigator back into the room and second, when he called the investigator shortly after the first interview to set up another one.

The magistrate judge also noted that the defendant expressed skepticism at the false evidence, yet continued to speak with the investigator. Finally, the magistrate judge noted that the investigator explicitly told the defendant that he could talk over the investigator's offer of cooperation with an attorney, but that the defendant did not pursue this offer.

The defendant objects that the magistrate judge improperly applied the factors of the totality of the circumstances test and that the investigator's conduct throughout the interviews was objectively coercive, sufficient to overbear the will of the defendant, and motivated his inculpatory statements. The defendant objects to the magistrate judge's consideration of his criminal history;[12] the R&R's use of the phrase "jibber jabber," and its finding that the defendant was agitated and confrontational during the first interview;[13] the R&R's finding

---

[12] The Court agrees with the magistrate judge that the defendant's criminal history is part of the totality of the circumstances inquiry. *See Ledbetter*, 35 F.3d at 1070 (stating that a defendant's prior criminal record is relevant because it evidences an experience with law enforcement officers and makes it more likely that a suspect will not give involuntary confessions); *Little*, 1993 WL 453396 at *9 (examining voluntariness and noting that the defendant, "who was already serving a sentence in an unrelated matter, was not a novice"). In the interviews, the investigator and the defendant discussed the defendant's criminal history, the amount of time he faced, and his experience with prisons and probation. The defendant's criminal history is thus relevant to the Court's consideration of the defendant's experience with police officers, relevant to what the investigator and the defendant discussed, and therefore relevant to whether his statements were voluntary. The Court overrules this objection.

[13] The Court has reviewed the first interview and finds the defendant's mood, for at least part of the interview, to be one of agitation and frustration. The Court does not, however, find that this distinction alters the outcome of the totality of the circumstances test as there was no evidence that the defendant feared violence, felt threatened, or that the investigator threatened immediate imprisonment if he did not cooperate. In addition, the Court notes that the defendant used the phrase "jibber jabber" when discussing what the investigator could do versus what the DA could do. Beyond giving the context in which the defendant used this phrase, the Court does not find that the R&R attached a great deal of importance to it in its consideration of the totality of the circumstances. Accordingly, these objections are overruled.

that the defendant was offered and rejected the chance to stop the interview and speak with an attorney;[14] and the R&R's finding that the defendant waited eight days before contacting Investigator Ogle for a second interview.[15] In addition, the defendant asserts that the following facts and circumstances support findings of objective coercion sufficient to overbear the will of the defendant: the magistrate judge's findings that certain statements by the investigator were "arguably" and "objectively" coercive; the defendant's decision to confess came after he was assured that he would not be charged and after the investigator promised him the prospect of drug rehabilitation, probation, and no prosecution; the investigator led the defendant to believe that he was only concerned with the gun and was not concerned with charging the defendant; the investigator's assurances that he would not lie to the defendant; and the investigator's insinuations that if the defendant cooperated, he would not go to prison.

---

[14] The defendant asserts that the investigator did not offer to stop the interview and allow the defendant the chance to speak with an attorney. The Court has reviewed the interviews and agrees with the magistrate judge's finding that in the first interview, the investigator told the defendant he could talk over the offer of cooperation with an attorney and the defendant did not pursue this offer.

[15] The defendant asserts that he repeatedly called the investigator to set up the interview and that the first call was placed shortly after the first interview. The Court has found nothing in the record to contradict the defendant's assertion and the R&R's finding that the investigator testified that the defendant called him several times is consistent with this assertion. Accordingly, the Court accepts the defendant's explanation as to how the second interview was set up. This does not, however, alter the outcome of the totality of the circumstances test. The defendant voluntarily re-initiated contact with the investigator during the first interview and again for a second interview. The defendant also told the investigator at the start of the second interview, which took place eight days later, that he was ready to speak about the handgun. The Court does not find these circumstances to be indicative of coercion such as to overbear the will of the defendant.

While the R&R notes isolated statements and promises that are or seem to be objectively coercive, when these statements are considered within the context of both interviews, the entirety of the investigator's conduct, and what actually resulted from the interviews, the Court agrees with the magistrate judge that the defendant's statements were not involuntary. The investigator's promises of leniency were not illusory, the investigator did not tell the defendant he would not be charged with anything if he cooperated, the defendant was amply notified of his constitutional rights, he was questioned for a reasonable amount of time and with all necessary creature comforts, the defendant had prior experience with the criminal justice system, and the charges the investigator told the defendant he was going to bring were the same charges the investigator brought. The investigator did not charge the defendant with the gun in state court, the investigator's statement about federal prosecution was made after the defendant confessed, and, unlike in *Lall*, there is no evidence that the investigator was deceiving the defendant about what he intended to do with the handgun or the statements made by the defendant. Further, and as noted above, neither promises of leniency nor misrepresentations of the evidence are sufficient to render a defendant's statements involuntary, especially when, as here, the promises of leniency were not broken or illusory.

In conclusion, the Court has considered the whole of the conduct from both interviews and agrees with the magistrate judge that the sum of all the statements and conduct throughout both interviews do not indicate that the defendant was coerced into making the admissions or that the isolated coercive statements were sufficient to overbear the will of the

defendant and motivated him to make the inculpatory statements. The totality of the circumstances do not indicate to the Court that the defendant's statements were motivated by a belief that he would not be charged with anything if he cooperated and charged if he did not. The defendant's statements were therefore obtained by legitimate police investigative methods that withstand constitutional scrutiny. Accordingly, the Court agrees with Magistrate Judge Shirley that the defendant's statements were voluntary and that the statements and the firearm should not be suppressed.

III.    **Conclusion**

For the reasons given above, the Court **OVERRULES** the defendant's objections [Doc. 30] to Magistrate Judge Shirley's Report and Recommendation. The Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 28]. The defendant's motion to suppress defendant's statements and memorandum in support [Doc. 13] is hereby **DENIED**.

IT IS SO ORDERED *NUNC PRO TUNC* January 7, 2011.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE